**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br>P.O. Box 11374<br>Portland, OR 97211<br><br>  Plaintiff,<br><br>  v.<br><br>U.S. FISH AND WILDLIFE SERVICE<br>1849 C Street NW<br>Washington, DC 20240<br><br>PAUL SOUZA, in his official capacity as Acting Director of the U.S. Fish and Wildlife Service<br>1849 C Street NW<br>Washington, DC 20240<br><br>*and*<br><br>DOUG BURGUM, in his official capacity as Secretary of the U.S. Department of the Interior<br>1849 C Street NW<br>Washington, DC 20240<br><br>  Defendants. | Case No._____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

**INTRODUCTION**

1.  Plaintiff Center for Biological Diversity ("Center") brings this case challenging the U.S. Fish and Wildlife Service's ("Service") failure to issue final rules on the Center's petition to list the Kern Canyon slender salamander and relictual slender salamander ("salamanders"), in violation of the Endangered Species Act's ("ESA" or "Act") nondiscretionary, congressionally mandated deadlines. The agency's failure to meet the deadline

delays crucial, lifesaving protections for the salamanders, increasing their risk of extinction.

2.  Plaintiff brings this lawsuit for declaratory and injunctive relief, seeking an Order declaring that the Service violated 16 U.S.C. § 1533(b)(6)(A) by failing to issue timely final rules implementing protections for the salamanders and directing the Service to issue the final rules by a date certain.

## JURISDICTION

3.  This Court has jurisdiction over this action pursuant to 16 U.S.C. § 1540(c), (g) (ESA citizen suit provision) and 28 U.S.C. § 1331 (federal question). This Court has authority to issue declaratory and injunctive relief pursuant to the ESA, 16 U.S.C. § 1540(g); Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202; and Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2).

4.  Plaintiff provided Defendants with 60-days' notice of the ESA violation, as required by 16 U.S.C. § 1540(g)(2)(A), by a letter to the Service dated September 5, 2024 explaining the Center's intent to sue based on the Service's failure to publish timely rules for the salamanders. Defendants have not remedied the violations set out in the notice and an actual controversy exists between the parties within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201.

5.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because Defendants reside in this judicial district.

## PARTIES

6.  Plaintiff the CENTER FOR BIOLOGICAL DIVERSITY is a national, non-profit conservation organization that works through science, law, and policy to protect imperiled wildlife and their habitat. The Center is incorporated in California and headquartered in Tucson,

Arizona, with offices throughout the United States including D.C. The Center has more than 89,000 active members throughout the country.

7. The Center brings this action on behalf of its organization, and its staff and members who derive ecological, recreational, aesthetic, educational, scientific, professional, and other benefits from these salamanders and their habitat. As a multitude of threats continue to push the salamanders dangerously close to extinction, Plaintiff's members' interests in protecting and recovering these species and their habitat are directly harmed by the Service's failure to issue timely findings.

8. For example, Center member Gordon Nipp lives in California near Kern Canyon and regularly hikes and explores the natural world within the habitat range of these two salamanders. Nipp regularly visits Mill Creek trail, Lucas Creek on the Flume Trail, and Stark Creek – areas that would serve as critical habitat for the salamanders. Nipp and his wife have observed salamanders in Mill Creek trail, and they plan to return to Mill Creek this spring to specifically search for the Kern Canyon and relictual slender salamanders. Nipp is harmed by the Service's failure to timely protect these salamanders because the potential loss of the Kern Canyon and relictual slender salamanders would lessen his experience in nature and because he has not yet had the opportunity to observe the species within their habitat.

9. Defendants' violation of the ESA's nondiscretionary mandatory deadline has delayed the ESA's protections for the salamanders, harming the Center's members' interests in them by decreasing the likelihood that members will encounter the species as part of their personal excursions. These injuries are actual, concrete injuries that are presently suffered by the Center's members, are directly caused by Defendants' acts and omissions, and will continue

unless the Court grants relief. The relief sought would redress these injuries. The Center and its members have no other adequate remedy at law.

10.     Defendant U.S. FISH AND WILDLIFE SERVICE is the agency within the Department of the Interior charged with implementing the ESA for the salamanders. The Secretary of the Interior has delegated administration of the ESA to the Service. 50 C.F.R. § 402.01(b).

11.     Defendant PAUL SOUZA is the Acting Director of the Service and is charged with ensuring that agency decisions comply with the ESA. Defendant Souza is sued in his official capacity.

12.     Defendant DOUG BURGUM is the Secretary of the U.S. Department of the Interior and has the ultimate responsibility to administer and implement the provisions of the ESA. Defendant Burgum is sued in his official capacity.

## STATUTORY FRAMEWORK

**The Endangered Species Act**

13.     The Endangered Species Act, 16 U.S.C. §§ 1531–1544, is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978). Its fundamental purposes are "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved [and] to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b).

14.     The ESA has a suite of substantive and procedural legal protections that apply to species once they are listed as endangered or threatened. For example, section 4(a)(3) of the Act

requires the Service to designate "critical habitat" for each endangered and threatened species. *Id.* § 1533(a)(3).

15. In addition, ESA section 7(a)(2) requires all federal agencies to ensure that their actions do not "jeopardize the continued existence" of any endangered or threatened species or "result in the destruction or adverse modification" of any listed species' critical habitat. *Id.* § 1536(a)(2).

16. ESA section 9 prohibits, among other actions, "any person" from causing the "take" of any protected fish or wildlife without lawful authorization from the Service. *Id.* §§ 1538(a)(1)(B), 1539; see also *id.* § 1532(19) (defining "take"). Other provisions require the Service to "develop and implement" recovery plans for listed species, *id.* § 1533(f); authorize the Service to acquire land for the protection of listed species, *id.* § 1534; and authorize the Service to make federal funds available to states to assist in the conservation of endangered and threatened species, *id.* § 1535(d).

17. The ESA defines a "species" as "any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." *Id.* § 1532(16).

18. A species is "endangered" when it "is in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6). A species is "threatened" when it is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(20).

19. The ESA requires the Service to determine whether any species is endangered or threatened because of any of the following factors: (A) the present or threatened destruction, modification, or curtailment of its habitat or range; (B) overutilization for commercial,

recreational, scientific, or educational purposes; (C) disease or predation; (D) the inadequacy of existing regulatory mechanisms; or (E) other natural or manmade factors affecting its continued existence. *Id.* § 1533(a)(1).

20. To ensure the timely protection of species at risk of extinction, Congress set forth a detailed process whereby citizens may petition the Service to list a species as endangered or threatened. In response, the Service must publish a series of three decisions according to statutory deadlines. First, within 90 days of receipt of a listing petition, the Service must, "to the maximum extent practicable," publish an initial finding as to whether the petition, "presents substantial scientific or commercial information indicating that the petitioned action may be warranted." *Id.* § 1533(b)(3)(A). This is known as the "90-day finding." If the Service finds in the 90-day finding that the petition does not present substantial information indicating that listing may be warranted, the petition is rejected and the process concludes.

21. If the Service determines that a petition does present substantial information indicating that listing "may be warranted," the agency must publish that finding and proceed with a scientific review of the species' status, known as a "status review." *Id.*

22. Upon completing the status review, and within 12 months of receiving the petition, the Service must publish a "12-month finding" with one of three listing determinations: (1) listing is "warranted"; (2) listing is "not warranted"; or (3) listing is "warranted but precluded" by other proposals for listing species, provided certain circumstances are met. *Id.* § 1533(b)(3)(B).

23. If the Service determines that listing is "warranted," the agency must publish that finding in the Federal Register along with the text of a proposed regulation to list the species as

endangered or threatened and take public comments on the proposed listing rule. *Id.* § 1533(b)(3)(B)(ii).

24. Within one year of publication of the proposed listing rule, the Service must publish in the Federal Register the final rule implementing its determination to list the species. *Id.* § 1533(b)(6)(A). This is known as a "final listing rule." The Service can extend the final listing rule deadline by one year if it provides appropriate notice in the Federal Register. *Id.* § 1533(b)(6)(A).

## FACTUAL BACKGROUND

**The Kern Canyon slender salamander and relictual slender salamander**

25. The Kern Canyon slender salamander (*Batrachoseps simatus*) and the relictual slender salamander (*Batrachoseps relictus*) are small, terrestrial, lungless salamanders that breathe through their skin. Both salamanders occur in California's southern Sierra Nevada Mountains. They catch invertebrates with projectile tongues, have small ranges, and are highly sedentary, not moving far from where they were born. The Kern Canyon slender salamander and the relictual slender salamander have small, isolated populations, making them particularly vulnerable to stochastic events.

26. The Kern Canyon slender salamander occurs in the lower Kern River Canyon in Kern County, California, and outside of Sequioa National Forest. Historically it occupied 18 sites but now occupies only nine sites and has become more uncommon within its range. It is threatened by habitat alteration, destruction, and degradation from cattle grazing, logging, mining, highway construction, small hydro development, and firewood collection.

27. The relictual slender salamander is known for its small size and very small snout, which is even smaller than that of the Kern Canyon slender salamander. It was historically

documented at 13 sites in the Sequoia National Forest, including five sites in the Lower Kern River Canyon that are all presumed to be extinct.

**Listing Petition and Response**

28.     The Center petitioned the Service to list the Kern Canyon slender salamander and the relictual slender salamander under the ESA in 2012.

29.     Ten years after the Center petitioned the Service to protect these salamanders, in 2022, the Service proposed to list the Kern Canyon salamander as threatened and the relictual slender salamander as endangered. 87 Fed. Reg. 63150 (Oct. 18, 2022).

30.     The Service described the Kern Canyon slender salamander as "facing threats due to grazing, recreation, fire, and climate change" and stated that the threats "will increase such that the species is likely to become endangered in the foreseeable future; therefore, we are proposing to list it as a threatened species." *Id.* at 63151.

31.     The Service described the relictual slender salamander as existing in a "very narrow area in a limited ecological setting" and stated that "a single catastrophic event could result in extinction of the species." *Id.* Therefore, the Service proposed listing the relictual slender salamander as an endangered species. *Id.*

32.     The Service's listing proposal included 2,051 acres of critical habitat for the Kern Canyon slender salamander and 2,685 acres for the relictual slender salamander. *Id.*

33.     In 2023, the Service extended the comment deadline for its proposed rules. 88 Fed. Reg. 81028 (Nov. 21, 2023). In its notice of extension of time, the Service described wildlife and climate change as the primary ongoing threats to both salamanders.

34.     The Service was required to publish its final listing rule within one year of when it published notice of its proposed regulation. Although the Service extended the comment period

for its proposed rule for the salamanders by one year, the deadline for the extension has passed and the rules should have been finalized by now.

35. The deadlines to finalize the rules for the Kern Canyon and relictual slender salamanders are therefore past due.

36. Until Defendants issue the statutorily-overdue final rules, the Kern Canyon and relictual slender salamanders will continue to lack necessary protections under the Act, contributing to their decline.

## CLAIMS FOR RELIEF

**Violation of the ESA for Failure to Publish Final Listing Rules for the Kern Canyon Slender Salamander and the Relictual Slender Salamander**

37. Plaintiff re-alleges and incorporates all allegations set forth in the preceding paragraphs.

38. The ESA requires the Service to publish a final rule within a year after publishing its proposed regulation under the Act. In response to the Center's petitions, the Service issued proposed rules to list these salamanders under the ESA. Although the Service extended the comment period by one-year, the deadline for that extension and for publication of the final rules has passed. Defendants failed to perform their nondiscretionary duty to publish these final rules, in violation of the ESA. 16 U.S.C. § 1533(b)(6)(A).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment providing the following relief:

1. Declare that Defendants violated the ESA by failing to issue final rules implementing the Service's proposed rules to protect the Kern Canyon and relictual slender salamanders;

2. Provide injunctive relief compelling Defendants to issue the final rules by a date certain;

3. Retain continuing jurisdiction to review Defendants' compliance with all judgments and orders herein;

4. Grant Plaintiff its reasonable attorneys' fees and costs as provided by the ESA, 16 U.S.C. § 1540(g)(4); and

5. Provide such other relief as the Court deems just and proper.

Respectfully submitted and dated this 27th day of March, 2025.

*/s/ Camila Cossío*
Camila Cossío (D.C. Bar No. OR0026)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
Phone: 971-717-6427
ccossio@biologicaldiversity.org

Brian Segee (Cal. Bar No. 200795)
Center for Biological Diversity
226 W. Ojai Ave., Ste. 101-442
Ojai, CA 93023-3278
Phone: 805-750-8852
bsegee@biologicaldiversity.org
Pro Hac Vice Admission Pending

*Attorneys for Plaintiff*